UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRE LAMAR HUNTER, #761529,

              Petitioner,                           Hon. Paul L. Maloney

v.                                           Case No. 1:18-CV-134

S.L. BURT,

              Respondent.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Hunter's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Hunter's petition be **denied**.

## Background

In the early morning hours of January 25, 2009, David Hall was shot and killed.   As a result, Petitioner was charged with first degree murder and possession of a firearm during the commission of a felony.   (ECF No. 12-16 at PageID.1117). Several individuals testified at Petitioner's jury trial.   The relevant portions of their testimony are summarized below.

1

### I.    David Haines

At approximately 3:20 a.m. on January 25, 2009, Haines, a City of Detroit police officer, was dispatched to the Tippin Inn.  (ECF No. 12-17 at PageID.1293-95).  Upon arrival, Haines observed a four-door Grand Prix automobile with bullet holes in both driver's side doors.  (ECF No. 12-17 at PageID.1295-97).  The area where this vehicle was located "was well lit" by street lights.  (ECF No. 12-17 at PageID.1297-1301).  Haines discovered a surveillance camera on the exterior of the bar and additional surveillance cameras inside the bar.  (ECF No. 12-17 at PageID.1297-98).

### II.    Ronald Gibson

As of January 25, 2009, Gibson was assigned to the Detroit Police Department Criminal Investigation Bureau as the leader of the video forensics team.  (ECF No. 12-17 at PageID.1318).  On or about this date, Gibson was dispatched to the Tippin Inn to "extract video data" from the facility's surveillance cameras.  (ECF No. 12-17 at PageID.1318-31).  When he reviewed and edited the recovered video footage, Gibson focused on a subject wearing a "hoodie and black jacket," as such was consistent with the information he had been provided regarding the incident.  (ECF No. 12-17 at PageID.1332).  Gibson later produced a series of still photos from the video data he recovered.  (ECF No. 12-17 at PageID.1324-25).  Several of these photos depicted David Hall and another person being followed outside the Tippin Inn by the subject in the hoodie and black jacket.  (ECF No. 12-17 at PageID.1335).

### III.    Melicia Walker-Samuels

In 2008, Walker-Samuels gave birth to a daughter.  (ECF No. 12-18 at PageID.1391-92).   Unbeknownst to Walker-Samuel's husband, David Hall was the father of this child.   (ECF No. 12-18 at PageID.1391, 1394).   At approximately 9:00 p.m. on the evening of January 24, 2009, Hall and Walker-Samuels met at a gas station.   (ECF No. 12-18 at PageID.1391-94).   Hall was upset that he was unable to visit with his daughter, but Walker-Samuels had not yet told her husband that he was not the father of her child.   (ECF No. 12-18 at PageID.1392-96).   Hall provided Walker-Samuels with items for their daughter, after which the pair departed separately.   (ECF No. 12-18 at PageID.1392-94).

Early on the morning of January 25, 2009, Hall and Walker-Samuels spoke on the telephone.   (ECF No. 12-18 at PageID.1395-96).   Walker-Samuels asked Hall if he would "take care of" her if she told her husband that Hall was the father of her child.   (ECF No. 12-18 at PageID.1395).   Hall responded, "yeah, I'm on my way." (ECF No. 12-18 at PageID.1395).   Shortly thereafter, Walker-Samuels was informed that Hall had been killed.   (ECF No. 12-18 at PageID.1396-98).

### IV.    Patrice Walker

As of January 25, 2009, Walker and David Hall were in a relationship and lived together.   (ECF No. 12-18 at PageID.1438-39).   On the evening of January 24, 2009, Walker and Hall met with Melicia Walker-Samuels so that Hall could deliver "the things he bought for the baby."   (ECF No. 12-18 at PageID.1439-41).   During

3

this meeting, Hall and Walker-Samuels "got into a little altercation."  (ECF No. 12-18 at PageID.1440-41).   Later that evening, Walker and Hall went to the Tippin Inn. (ECF No. 12-18 at PageID.1441-42).   While there, Hall received a telephone call from Melicia Walker-Samuels who informed Hall that "her husband put her and the baby out."  (ECF No. 12-18 at PageID.1442).

Following this telephone call, Walker and Hall exited the Tippin Inn and began walking toward Walker's Grand Prix automobile.   (ECF No. 12-18 at PageID.1442). Before the pair could depart, however, a man wearing "a yellow hoodie and a black jacket" approached the pair and fired "two or three" shots at Hall.   (ECF No. 12-18 at PageID.1443-44).   Walker later selected Petitioner from a photo array presented to her by the police.   (ECF No. 12-19 at PageID.1496).   At trial, Walker identified Petitioner in several of the photos Ronald Gibson produced, and also directly identified Petitioner as the man who killed Hall.   (ECF No. 12-18 at PageID.1447-53).

### V.    Brian Bowser

On January 25, 2009, Bowser, a City of Detroit Police Officer, was dispatched to investigate David Hall's killing.   (ECF No. 12-19 at PageID.1503-04).   As part of his investigation, Bowser spoke with Patrice Walker who was "visibly upset," but did not appear intoxicated.   (ECF No. 12-19 at PageID.1504-05).

### VI.    Ronald Smith

Smith and David Hall were step-brothers and grew up together.  (ECF No. 12-18 at PageID.1429).  Smith had also known Petitioner for more than 20 years. (ECF No. 12-18 at PageID.1429-31).  Smith was shown several of the still photos Ronald Gibson produced from the Tippin Inn video footage.  (ECF No. 12-18 at PageID.1431).  Smith identified Petitioner as the individual in the photos wearing "a yellow hood and a black jacket."  (ECF No. 12-18 at PageID.1431-32).

### VII.   Michael Turner

Turner and Petitioner were "close friends."  (ECF No. 12-19 at PageID.1527). Turner was at the Tippin Inn when David Hall was killed.  (ECF No. 12-19 at PageID.1522-26).  Turner was shown portions of the video footage recovered by Ronald Gibson, as well as several of the photos Gibson created, and he was unable to identify Petitioner in any of this material.  (ECF No. 12-19 at PageID.1528-33). Turner observed the person wearing the yellow hoodie in the surveillance footage, but indicated that that person was not Petitioner.  (ECF No. 12-19 at PageID.1528-34).

### VIII.  Germeka Whitaker

Whitaker and Petitioner are cousins.  (ECF No. 12-19 at PageID.1579). Between 1:00-1:30 a.m. on the morning of January 25, 2009, Whitaker arrived at an "after hours" club where she and Petitioner were then working.  (ECF No. 12-19 at PageID.1579-80).  When Whitaker arrived at the club, Petitioner was already there "to get everything started to set up for the night."  (ECF No. 12-19 at PageID.1580).

5

This club was located 20-25 minutes from the Tippin Inn.   (ECF No. 12-19 at PageID.1592-94).   Whitaker and Petitioner remained at this after-hours club "until the next morning."   (ECF No. 12-19 at PageID.1581-82).   Whitaker was shown several of the photos Ronald Gibson produced from the Tippin Inn video footage. (ECF No. 12-19 at PageID.1582).   Whitaker indicated that the person in the photos wearing the yellow hoodie was not Petitioner.   (ECF No. 12-19 at PageID.1582).

### IX.   Andre Hunter

On the evening of January 24, 2009, Petitioner arrived at the Tippin Inn between 9:00-9:30 p.m. and departed "between 11:30 and 12."   (ECF No. 12-20 at PageID.1607-08).   During this time, Petitioner did not see David Hall.   (ECF No. 12-20 at PageID.1611).   After departing the Tippin Inn, Petitioner picked up "some liquor supplies" and proceeded to the after-hours club he operated, arriving at approximately 12:45 a.m.   (ECF No. 12-20 at PageID.1608).   Germeka Whitaker arrived soon thereafter.   (ECF No. 12-20 at PageID.1610).   Petitioner did not depart the after-hours club until 6:00 or 7:00 a.m.   (ECF No. 12-20 at PageID.1608). Petitioner was shown several of the photos Ronald Gibson produced from the Tippin Inn video footage.   (ECF No. 12-20 at PageID.1611-13).   Petitioner indicated that the person in the photos wearing the yellow hoodie was not him, as he was wearing a wine colored button-up shirt on the night in question.   (ECF No. 12-20 at PageID.1611-14).   Petitioner denied shooting David Hall.   (ECF No. 12-20 at PageID.1615).

Following the presentation of evidence,[1] the jury found Petitioner guilty of first-degree murder and possession of a firearm during the commission of a felony. (ECF No. 12-20 at PageID.1693-96).   Petitioner was sentenced to serve life in prison on the murder conviction and a consecutive sentence of two years on the firearm conviction.   (ECF No. 12-21 at PageID.1703).   Petitioner appealed his conviction in the Michigan Court of Appeals.   The following claims were asserted by Petitioner's attorney:

I.     Was it error for the trial court judge to deny the Defendant-Appellant's requests that the jury receive the entire text of M Crim JI 7.8, Identification, where the evidence presented during his trial clearly supported the request that the entire text of the instruction be given?

II.    Did the insufficient evidence presented during the Defendant-Appellant's trial on the element of identity, to support the jury's verdict of guilty beyond a reasonable doubt of one count each of first degree premeditated murder and possession of a firearm in the commission of a felony, constitute a denial of the due process of law guaranteed by the Fifth Amendment to the United [States] Constitution?

Petitioner also submitted a pro per supplement in which he asserted the following additional issue:

III.   Was Defendant-Appellant denied his right to the effective assistance of counsel where counsel failed to request or consult identification expert where identification was central to the prosecution's case in chief?   Thus denying Defendant-Appellant his right to a fair trial, and due process of law under both state and federal constitutions.

---

[1] The jury also heard testimony from a medical examiner that David Hall died as a result of two gunshot wounds to the chest, one of which struck him in the heart and liver.   (ECF No. 12-17 at PageID.1280-84).

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Hunter*, 2016 WL 930746 (Mich. Ct. App., Mar. 10, 2016). Raising these same issues, as well as two other issues not previously asserted, Petitioner unsuccessfully moved in the Michigan Supreme Court for leave to appeal. *People v. Hunter*, 887 N.W.2d 202 (Mich. 2016). On February 7, 2018, Petitioner initiated the present action asserting the three claims identified above.

## STANDARD OF REVIEW

Hunter's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

>  (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
>    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are

8

given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

As the Supreme Court recently emphasized, this standard is "intentionally difficult

to meet."  *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (internal quotation omitted).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal

law when "the state court arrives at a conclusion opposite to that reached by [the

Supreme] Court on a question of law" or "if the state court confronts facts that are

materially indistinguishable from a relevant Supreme Court precedent and arrives

at an opposite result."  *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting

*Williams v. Taylor*, 529 U.S. 362, 405 (2000)).   A writ may not issue simply because

the reviewing court "concludes in its independent judgment that the relevant state-

court decision applied clearly established federal law erroneously or incorrectly."

*Williams,* 529 U.S. at 411.   Rather, the Court must also find the state court's

application thereof to be *objectively* unreasonable.  *Bell*, 535 U.S. at 694; *Williams*,

529 U.S. at 409-12.

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the

state court was based on an unreasonable determination of the facts in light of the

evidence presented, the "factual determination by [the] state courts are presumed

correct absent clear and convincing evidence to the contrary."  *Ayers*, 623 F.3d at

308.   Accordingly, a decision "adjudicated on the merits in a state court and based

on  a  factual  determination  will  not  be  overturned  on  factual  grounds  unless

objectively unreasonable in light of the evidence presented in the state-court proceeding." *Id.*

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy either subsection therein. This requirement, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 562 U.S. 86, 100 (2011). Instead, if a state court rejects a federal claim, a federal habeas court "*must presume* that the federal claim was adjudicated on the merits." *Johnson v. Williams*, 568 U.S. 289, 301 (2013). If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

## Analysis

### I.    Sufficiency of the Evidence

Petitioner claims that he is entitled to relief because his convictions are not supported by constitutionally sufficient evidence. Specifically, Petitioner challenges the sufficiency of the evidence identifying him as the person who shot David Hall. Claims challenging the sufficiency of the evidence are governed by the standard articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979), pursuant to which it must be determined whether viewing the evidence in the light most favorable to the prosecution and according the benefit of all reasonable inferences to the prosecution,

any rational trier of fact could have found Petitioner guilty beyond a reasonable doubt.  *See O'Hara v. Brigano*, 499 F.3d 492, 499 (6th Cir. 2007) (citing *Jackson*, 443 U.S. at 319-26).

When determining whether there exists sufficient evidence to support a conviction, the Court may not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for that of the jury.  *See United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006).  Furthermore, where the record supports conflicting inferences the Court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *O'Hara*, 499 F.3d at 499 (quoting *Jackson*, 443 U.S. at 326).

Patrice Walker witnessed Hall's murder and later identified Petitioner from a photo line-up.  Walker testified that Hall's killer was wearing a yellow hoodie. Walker and Ronald Smith were both shown surveillance photos of a man wearing a yellow hoodie inside the Tippin Inn shortly before Hall's murder.   Walker and Smith both identified Petitioner as the man in the photos.   Walker also identified Petitioner, at trial, as the man who killed Hall.   Petitioner advances three arguments that this evidence constitutes an insufficient basis to maintain his convictions: (1) Walker's testimony is not worthy of belief; (2) Petitioner presented evidence that he was elsewhere when the shooting occurred; and (3) subsequently discovered evidence undermines Walker's identification testimony.

A.    Patrice Walker's Testimony

Petitioner has identified certain alleged weaknesses in Walker's testimony. For example, Walker initially stated to police that Hall's assailant was wearing a black hoodie.  (ECF No. 12-18 at PageID.1446).   Walker contacted the police "the next day," however, to report that Hall's killer had actually been wearing a yellow hoodie.  (ECF No. 12-18 at PageID.1446).   Walker attributed this discrepancy to the fact that she was "shooken up" in the aftermath of Hall's killing, but as she began "calming down, [she] remembered more details."  (ECF No. 12-18 at PageID.1446-47).

On cross-examination, Petitioner introduced evidence that Walker had previously described Hall's assailant as five feet, seven inches tall.   (ECF No. 12-19 at PageID.1478).   Petitioner, however, is apparently six feet, two inches tall.   (ECF No. 12-22 at PageID.1778).   While this difference in stature is not insignificant, and arguably diminishes Walker's credibility, the extent to which such advances Petitioner's cause is offset by two things.

First, Petitioner has not identified any evidence which expressly established his height as six feet, two inches.   The evidence to which Petitioner cites to support his assertion as to his own height, is from an MDOC report produced after Petitioner's conviction.  (ECF No. 12-22 at PageID.1778).   While the jury undoubtedly saw Petitioner stand at one or more times during the trial, Petitioner can only speculate as to the juror's perception of his height and, by extension, the extent to which

Walker's testimony should be discounted.   Also, when Walker was cross-examined about her previous statement that Hall's assailant was five feet, seven inches tall, Walker explained this discrepancy by explaining that she had been crouching down when Hall was shot.   (ECF 12-19 at PageID.1478).

Petitioner further notes that, on cross-examination, Walker suggested that she did not see the face of Hall's assailant.   (ECF No. 12-19 at PageID.1492-93). Walker later explained, however, that what she meant was that while she did, in fact, observe the face of Hall's killer, she did not get a close enough look to "give a description of his eyes, nose and lips."   (ECF No. 12-18 at PageID.1444; ECF No. 12-19 at PageID.1495).

Petitioner also notes testimony from Michael Turner regarding his encounter with a "young lady" who came running back into the Tippin Inn immediately after Hall was shot.   According to Turner, this woman "was hollering and screaming . . . they shot him."   (ECF No. 12-19 at PageID.1524-25).   Turner asked, "who?" to which the woman responded, "I don't know, I didn't see him."   (ECF No. 12-19 at PageID.1525).   Turner did not identify the woman with whom he spoke, however, and Patrice Walker testified that she had no such conversation with Turner. (ECF No. 12-18 at PageID.1454).

The identification testimony provided by Patrice Walker and Ronald Smith is sufficient for a reasonable juror to conclude beyond a reasonable doubt that Petitioner shot David Hall.   Petitioner's arguments challenging the sufficiency of this evidence,

implicate assessments of witness credibility and conflicting facts, which the jury resolved against Petitioner.   This Court cannot now substitute its judgment for that exercised by the jury.

### B. Evidence that Petitioner was Elsewhere when Hall was Killed

Petitioner testified that he was at his after hours club when Hall was killed. Germeka Whitaker's testimony supported Petitioner's testimony in this regard. This evidence obviously conflicts with Patrice Walker's testimony identifying Petitioner as David Hall's killer.   That the jury evaluated and weighed this competing evidence against Petitioner is not a basis for relief.   Petitioner's argument incorrectly presupposes that this Court can simply override the jury's assessment of the evidence and the conclusions it reached regarding such.

### C. Newly Discovered Evidence

Patrice Walker testified that, following David Hall's murder, police presented to her a photo array from which she identified Petitioner as David Hall's killer. Petitioner argues that evidence discovered subsequent to trial casts doubt on this identification procedure and, therefore, by extension Walker's identification testimony.[2]

---

[2] Petitioner also asserts that the photo array procedure by which Walker identified him was impermissibly suggestive and that, as a result, the introduction of Walker's identification testimony violated his right to a fair trial.   As discussed below, this claim is without merit.

On December 28, 2015, Sarah Brown and Traci Miller each executed an affidavit asserting that, on an unspecified date between mid-February 2009 and early March 2009, they were shown a cell phone photo of Petitioner taken by Patrice Samuels.  (ECF No. 12-22 at PageID.1915, 1917).   According to Brown and Miller, Samuels stated that she showed this photo to Patrice Walker, informing her that "this is the person they are saying did the shooting."  (ECF No. 12-22 at PageID.1915, 1917).   Petitioner argues that this encounter between Patrice Walker and Patrice Samuels occurred before Walker was presented with the photo array, thereby undermining her identification testimony.   Petitioner's argument is unpersuasive for several reasons.

First, neither Sarah Brown nor Traci Miller asserted that they actually witnessed the alleged encounter between Patrice Walker and Patrice Samuels. Rather, Brown and Miller made assertions concerning what Samuels allegedly told them about the encounter in question.   Such constitutes hearsay, which does not advance Petitioner's cause.   Second, Petitioner's assertion that the alleged encounter between Patrice Walker and Patrice Samuels occurred before Walker was shown the photo array by police is speculation.   Petitioner asserts that Patrice Walker was presented with the photo array on March 4, 2009.  (ECF No. 13 at PageID.2223).   But Petitioner cites to nothing in the record supporting this assertion, and Patrice Walker did not testify as to the date she was presented with the photo array.   Moreover, the assertions by Sarah Brown and Traci Miller do not

15

foreclose the possibility that the encounter between Patrice Walker and Patrice Samuels occurred after March 4, 2009.   In sum, the affidavits submitted by Petitioner neither undermine Patrice Walker's identification testimony nor diminish the sufficiency of the evidence supporting Petitioner's conviction.

The Michigan Court of Appeals denied Petitioner's challenge to the sufficiency of the evidence on the ground that, while there existed conflicting evidence regarding the identity of David Hall's killer, "the resolution of this conflicting evidence was a question for the jury" and "[v]iewed in a light most favorable to the prosecution, the evidence was sufficient to establish defendant's identity and to support his convictions. . . ."   *Hunter*, 2016 WL 930746 at *3.   For the reasons discussed herein, the denial of this claim by the Michigan Court of Appeals is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.   Accordingly, this claim raises no issue upon which habeas relief may be granted.

## II.    Suggestive Identification Procedure

Petitioner claims that the photo array procedure by which Patrice Walker identified him as David Hall's killer was improperly suggestive and, therefore, denied him of the right to a fair trial.   The Court notes that Petitioner has failed to properly exhaust this claim by first presenting it in state court.   Petitioner's failure to exhaust

16

this claim notwithstanding, it may nonetheless be denied on the merits.  *See* 28 U.S.C. § 2254(b)(2).

The due process clause protects criminal defendants from being convicted on the basis of "evidence derived from a suggestive identification procedure" that was "unnecessarily suggestive and conducive to irreparable mistaken identification." *Haliym v. Mitchell*, 492 F.3d 680, 704 (6th Cir. 2007) (quoting *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967) and citing *Neil v. Biggers*, 409 U.S. 188, 197 (1972)).  It is the likelihood of misidentification that violates a criminal defendant's due process rights.  *See Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994) (citing *Biggers*, 409 U.S. at 198).  Accordingly, absent "a very substantial likelihood of irreparable misidentification," identification evidence "is for the jury to weigh."  *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977).

To determine whether an identification procedure violated a criminal defendant's due process rights, courts employ a two-step analysis.  *Haliym*, 492 F.3d at 704.  The court must first determine whether the identification procedure in question was unnecessarily suggestive.  *Id.*  Determining whether an identification procedure is unnecessarily suggestive "depends upon whether the witness's attention was directed to a suspect because of police conduct."  *Howard v. Bouchard*, 405 F.3d 458, 470 (6th Cir. 2005).  If this threshold is met, the Court must then consider whether the identification evidence is nevertheless reliable despite the impermissible suggestiveness of the challenged identification procedure.  *Haliym*, 492 F.3d at 704.

17

The Court need not consider the second part of this analysis, as Petitioner has failed to present any evidence even suggesting that the circumstances surrounding the photo array procedure were unnecessarily suggestive or that any alleged misconduct was known to the police or undertaken at their direction or suggestion. Accordingly, the Court rejects this claim.

### III.    Jury Instructions

Michigan Model Criminal Jury Instruction 7.8, concerning Identification, reads as follows:

(1) One of the issues in this case is the identification of the defendant as the person who committed the crime. The prosecutor must prove beyond a reasonable doubt that the crime was committed and that the defendant was the person who committed it.

(2) In deciding how dependable an identification is, think about such things as how good a chance the witness had to see the offender at the time, how long the witness was watching, whether the witness had seen or known the offender before, how far away the witness was, whether the area was well-lighted, and the witness's state of mind at that time.

(3) Also, think about the circumstances at the time of the identification, such as how much time had passed since the crime, how sure the witness was about the identification, and the witness's state of mind during the identification.

(4) You may also consider any times that the witness failed to identify the defendant, or made an identification or gave a description that did not agree with (his/her) identification of the defendant during trial.

(5) You should examine the witness's identification testimony carefully. You may consider whether other evidence supports the identification, because then it may be more reliable. However, you may use the identification testimony alone to convict the defendant, as long as you believe the testimony and you find that it proves beyond a reasonable doubt that the defendant was the person who committed the crime.

18

M. Crim. JI 7.8

In his final instructions to the jury, the trial judge read this instruction to the jury, absent subsection (4). (ECF No. 12-20 at PageID.1672-73). Petitioner objected to the trial judge's failure to include subsection (4). (ECF No. 12-20 at PageID.1690). The trial judge denied Petitioner's objection as follows:

> That's because in regard to 7.8, there was no testimony elicited during the course of trial of any misidentification. Had there been, then it would have been given, but there was none. That's why that's in the alternative, and you can take a look at the Standard Criminal Jury Instruction. It is an alternate.

(ECF No. 12-20 at PageID.1690).

Petitioner argues that he is entitled to relief because the trial judge refused to include subsection (4) in his instructions to the jury. The Michigan Court of Appeals found that, while the trial judge erred by failing to give the requested instruction, Petitioner was nevertheless not entitled to relief. Specifically, the court found that, while the trial judge was correct that "there was no evidence that a witness misidentified another individual as the shooter," the inconsistencies in Patrice Walker's testimony warranted giving the requested instruction. *Hunter*, 2016 WL 930746 at *2 (internal citations and footnote omitted). The court further concluded, however, that this error did not merit relief because the jury instructions, when "considered as a whole," properly instructed the jury how to assess the identification evidence, as well as how to generally assess witness credibility. *Id.*

19

Claims challenging the refusal to give a requested jury instruction warrant relief, generally, where three conditions are satisfied: (1) the requested instruction was an accurate statement of the law; (2) the substance of the requested instruction is not substantially covered by other instructions presented to the jury; and (3) the failure to give the instruction impairs the defendant's theory of the case. *See, e.g., United States v. Carr*, 5 F.3d 986, 992 (6th Cir. 1993).   In the context of a habeas petition under § 2254, however, the petitioner must further establish that the failure to give the requested instruction "substantially affected the jury deliberations such that the omission 'so infected the entire trial that the resulting conviction violated due process.'" *Sutton v. Bell*, 683 F.Supp.2d 640, 722 (E.D. Tenn. 2010) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).   This constitutes an "especially heavy burden because no erroneous instruction was given" and that "an omission, or incomplete instruction is less likely to be prejudicial than a misstatement of the law." *Sutton*, 683 F.Supp.2d at 722 (quoting *Kibbe*, 431 U.S. at 155).

Petitioner cannot satisfy this stringent standard.   As the Michigan Court of Appeals observed, the trial judge instructed the jury at length concerning its role to "decide what the facts of this case are," including significant guidance and instruction to assist the jurors in assessing witness credibility.   (ECF No. 12-20 at PageID.1670-72).   The jury was explicitly instructed that the prosecution "must prove beyond a reasonable doubt that the crimes were committed and that the defendant was the person who committed them."   (ECF No. 12-20 at PageID.1672-73).   The trial judge

also instructed the jury at length regarding how to assess identification testimony. (ECF No. 12-20 at PageID.1673).

In short, while the trial judge failed to include the requested instruction, the substance of such was implicit in the instructions as a whole.  As such, Petitioner did not experience a denial of his right to due process or to a fair trial.  The denial of this claim by the Michigan Court of Appeals is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.

## IV.    Ineffective Assistance

Finally, Petitioner asserts that his trial counsel rendered ineffective assistance thereby depriving him of the right to a fair trial.  Specifically, Plaintiff argues this his attorney "failed to request or consult with an identification expert where identification was crucial to Petitioner's defense."  (ECF No. 1 at PageID.2).

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom.  *See Premo v. Moore*, 562 U.S. 115, 121 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).  To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  *Premo*, 562 U.S. at 121 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).  A court

considering a claim of ineffective assistance must apply a "strong presumption that
counsel's representation was within the 'wide range' of reasonable professional
assistance."  *Premo*, 562 U.S. at 121 (quoting *Strickland*, 466 U.S. at 689).
Petitioner's burden is to show that "counsel made errors so serious that [he] was not
functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."
*Premo*, 562 U.S. at 121-22 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his
attorney's allegedly deficient performance.  Prejudice, in this context, has been
defined as "a reasonable probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different."  *Premo*, 562 U.S. at 122 (quoting
*Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).  The issue is whether counsel's
representation "amounted to incompetence under 'prevailing professional norms,' not
whether it deviated from best practices or most common custom."  *Premo*, 562 U.S.
at 122 (quoting *Strickland*, 466 U.S. at 690).  This is a heavy burden for Petitioner
to meet, because he must establish that his counsel's performance was "so manifestly
ineffective that defeat was snatched from the hands of probable victory."  *Jacobs v.
Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

As the Supreme Court has made clear, even when reviewing an ineffective
assistance of counsel claim *de novo*, "the standard for judging counsel's
representation is a most deferential one."  *Premo*, 562 U.S. at 122.  Likewise, the
standard by which petitions for habeas relief are judged is "highly deferential."

Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential. *Id.* (citations omitted).   As the *Premo* Court concluded:

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial.   Federal habeas courts must guard against the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d).   When § 2254(d) applies, the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 122-23 (internal citations omitted).

Petitioner offers no evidence that an "identification expert" would have offered evidence or testimony favorable to his defense or that such would likely have resulted in a different outcome.   In the absence of any evidence as to how an "identification expert" would have advanced his cause, Petitioner's claim is based on nothing more that speculation which is an insufficient basis for obtaining habeas relief.   The Michigan Court of Appeals rejected this claim, observing that:

> defendant offers no proof that experts would have testified favorably to defendant if called.   Absent such proof, defendant has not shown that counsel's performance fell below an objective level of reasonableness or that retention of experts could have altered the outcome of the trial. Thus, defendant has not shown he was denied the effective assistance of counsel.

*Hunter*, 2016 WL 930746 at *2 (internal citations omitted).

The denial of this claim by the Michigan Court of Appeals is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the

facts in light of the evidence presented.   Accordingly, this claim raises no issue upon which habeas relief may be granted.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States.   Accordingly, the undersigned recommends that Hunter's petition for writ of habeas corpus be **DENIED**.   The undersigned further recommends that a certificate of appealability be denied.   *See Slack v. McDaniel*, 529 U.S. 473 (2000); *Miller-El*, 537 U.S. at 336.

Dated: January 9, 2019                              /s/   Phillip J. Green
                                                     PHILLIP J. GREEN
                                                     United States Magistrate Judge

## **NOTICE TO PARTIES**

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.   28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).   All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).   Failure to file timely and specific objections may constitute a waiver of any further right of appeal.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).   General objections do not suffice.   *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).